Case number 10-3232, People v. Marchand-Wright. Would both lawyers step up and identify yourselves for the record? Good morning. My name is Linda Olthoff, and I represent Marchand-Wright. Assistant State's Attorney Brian Hodes, and I represent the People. All right. Each of you will have about 15 minutes to present your argument. From there, Ms. Olthoff, you may save out some time for rebuttal. Okay. All right. You may proceed. Marchand-Wright was convicted of the first-degree murder of Sean Page. This is a case where the culmination of errors on the part of the prosecutor, defense attorney, and even the court resulted in a trial that was so fundamentally unfair and contrary to our notions of fairness that we expect out of our criminal justice system. This morning, I would like to focus primarily on the errors and the impact of the misrepresentation of the plea agreement with Aki Williams, the State's primary witness against Marchand-Wright, and also the absolute preclusion of Wright's ability to present his alibi defense. So you would call it an alibi? Yes. All right. First, the prosecutor misrepresented the terms of the plea agreement that Mr. Williams received in exchange for his testimony in this case. They conveyed to the jury that he was only receiving three years off and a 30-year sentence, when in fact the terms of the plea agreement were that he would get 60% downward departure from the 30-year minimum that he was facing in federal court. Before we get into that very much, the rules don't really allow for attaching something to the appendix and then the court proceeding to consider it. That's the first thing we should probably address. I mean, I know we can take judicial notice of federal court proceedings, but Supreme Court rules of Illinois don't allow an appellant to submit something in the appendix and then ask the court to use it for the appeal, does it? Well, this was litigated before this court. But the proceedings and the plea agreement that came from the federal court  Well, it was in the possession of the state's attorney and the defense counsel and it was a subject of litigation and a post-trial motion. Yes, I'm aware of all that. But the rules don't allow for the appellant to attach something that's not in the record to the appendix and ask the court to use it to resolve an issue. Well, then I think we would ask this court to take judicial notice of the plea agreement. The plea agreement is a public record and this court could look it up in the federal system and look at it that way. Did the trial court review this agreement? No, she did not. Well, I thought you said it was part of the post-trial proceedings. Well, the court did not look at the agreement. They discussed it. The defense counsel brought it up that he found out around the time of closing arguments that this agreement was much different than had been represented before the jury. When was it tendered to him? I thought there was no question he had it as a matter of discovery. He did have it. And that's why this is a case where you have a combination of prosecutor filing to fulfill its obligation to see that the jury receives accurate information and defense counsel also ensuring that his clients through process rights are protected. Let me ask you this. What about the actual sentencing hearing? Has anyone included that in the record on appeal? The sentencing hearing, I mean, in federal court that took place a year after this trial at which time apparently the district judge sentenced Mr. Williams to 15 years. Do we know at all what happened at that hearing? No, we know that he received the 15 years. We don't have the transcript of that hearing. Is this record really adequate to consider the effectiveness of counsel? Here we hear the trial counsel saying, well, I heard from my client. There's information in his possession. Do we even know that he even read the agreement? We don't even have the agreement itself in the record. Well, officially in the record. We don't have testimony from counsel as to whether or not he read it and decided not to use it. I mean, is this record adequate to even consider those questions? It is adequate. We know that Williams received a sentence that was much less than what was represented. We know that defense counsel did not investigate or review the terms of the agreement. Well, how do we know that? How do we know that? Well, I mean, you can tell from the post-trial motion that this was going on. I mean, if this court decides that there's not enough here and needs to remand it for a hearing on that, we can certainly do that with new counsel. You know, the agreement in itself, it is in the record. I mean, because it's not in the record. It's in the event. And it suggests that the minimum sentence that Mr. Williams could receive was 30 to life. Do you agree with that? Based on his five prior felony convictions. The minimum that he would get was 30. The max he could get was life. The agreement also sets forth that if he cooperates, I don't know in what. It talks about cooperating, but it doesn't talk about a state case. It talks about cooperating with the feds. I can't say that word today for some reason. Anyway, but it says that if he does, they can request of the district court to reduce it by 60%, which would, I think, take us to less than 15, wouldn't it? Or a little more. I'm sorry. Take us to about 18 or something? 18. And then you knock off the 3 for the for this testimony. But, so his lawyer had the plea agreement and it had all these things in it. And it also involved a massive heroin distribution case in the federal court. Now, hindsight is 20-20, but isn't it reasonable for the lawyer not to want the jury to know about the federal case and this massive heroin distribution ring that the defendant was intimately involved in? Yes, and that was a subject of a motion to eliminate, and the parties agreed we're not going to bring out the details of the offense. We are going to front that he is getting that Williams is getting consideration in exchange for his testimony in this case, in that federal case. So, isn't it reasonable for the lawyer representing the appellant, defendant, not to want the jury to become fully aware of this whole mess over there in federal court? Doesn't that tarnish the defendant in front of the jury? I think that the defense counsel can ensure that the jury sees the actual terms of the agreement, and that this guy is going to be subject to 18 years. That's just three years off of 30. That is different. He doesn't need to bring out the terms of the federal offense. I'm not saying he needs to. I'm saying, is the state going to go along with this idea that the deal is just sort of in a vacuum? There's no explanation. Does the state get to inquire once this deal is discussed? If there really was such a deal in advance? I don't really know. But why would the state not be allowed to inquire about his deal? If it's coming out that he's got a deal, why don't they get a chance to go into the deal? Which involves this massive heroin distribution ring involving everybody in this case. Well, the state may not want to do that. I mean, that carries up its own witnesses. He's got five felony convictions. The jury is already aware of that. You could say he's very dirty all the way. But the point is that the parties decided in advance that they really didn't want to have a trial involved in this trial. But if it's coming in, then I think the state wants to I mean, I don't see how you can avoid it. What they cannot do is misrepresent. There's nowhere about this three years off of 30. To be accurate and to be truthful before the jury does not require them to go into all the dirty details of this federal offense. It only requires them to read the terms of the plea agreement. Let me ask you another question. Now, you've submitted this plea agreement and are asking us to take judicial notice. The state responds and says, well, if you're going to take judicial notice, take judicial notice of the whole thing. So, a month before Mr. Williams' sentence, the federal prosecutor asked the trial judge to sentence him to 30 years. You're aware of that, aren't you? Right. So, how is there a deal for 30 years or 15 or whatever it is, 18. How is there a deal when the U.S. Attorney is asking the judge, sentence Aki Williams to 30 years? No, I don't think he asked him to sentence him to 30 years. It's in the record. I mean, I keep saying the record. They supplied it in their brief like you supplied it in your brief and it's in the brief and it's a written document and it's a request filed one month before he's actually sentenced and the U.S. Attorney asked the sentencing judge to sentence him to 380 months or 360, whatever it was. That's what they asked for. So how do we, from this, determine there was some deal for 15 or 18? Well, my understanding of that addendum that they filed was that they added some more information concerning Williams' criminal livelihood that might affect the sentencing guideline range. It did not. It was still subject to the 360 and he still got that percentage off of that deal. Here it is. It's page 6 and it tells when it was filed and it says conclusion. For the reasons set forth herein, the government respectfully requests that this court apply the enhancement for criminal livelihood in calculating Defendant Aki Williams' guideline range. The guideline range calculated by the PSR was offense level 39 and that was because of his five convictions and criminal history category 6 resulting in an advisory guideline range of 360 months to life in prison. Adding two additional offense level points will raise the offense level to 41 but will not change the advisory guidelines. They're asking that he be sentenced to the 30 years. I think that they were asking to it sounds like they were saying his range is 360 months. That's his range. It didn't say a sentence it said adjust the guidelines. The guidelines previously were 360 months. He had a certain point level due to his criminal history, etc. Now they found additional criminal livelihood adjust the range the range is still 360 the plea agreement still stands we're still using that 60% off of the adjusted range and that was my understanding of that. One of the cases you cited is Olinger but don't we have a little different facts between those two cases in Olinger there was a clear definite statement of how many years the defendant is going to get in this case we have something and that was clearly perjury on the part of the defendant who testified in that case here we have a situation where we have a statement that if the U.S. attorney decides and so on and so forth then they can go ahead and ask for the reduction isn't that kind of different can his statement be considered perjury in the sense that this 60% is contingent upon whatever considerations the U.S. attorney decides to do before they even ask for a 60% reduction Well I mean it seems to me that the terms of the agreement paragraph 13 of the agreement the parties have agreed as to this sentence and that we will the term shall include a term of imprisonment and custody of 60% of the low end of the applicable range I think that's pretty clear I was looking at paragraph 13 specifically it says if the government moves the court if right and it says in a paragraph or two before that that the government you know assuming he cooperates the government will move the court to depart from the applicable guidelines paragraph 12 the government in exchange for his full and truthful cooperation the government shall move the court to depart from the applicable guidelines so I think it's pretty clear I mean this is what the client expected once he was at trial this is what was set out and to say anything different I mean the jury here Well the whole deal is contingent on the judge agreeing isn't it? Yes. So how do we know that if we don't even have this sentencing hearing that apparently took place a year after this case how do we know what happened at all and how do we know that the judge didn't decide to just give him the 18 versus anything else because the US attorney didn't ask for it I mean you're reading his this memorandum completely differently than I am but I read it as a request to give him the full 30 years that's how I read the memorandum but without the sentencing hearing how do we really know what happened because in the end it was the district judge who held all the strings she if it was Judge Gatchal did not have to agree to any of this so aren't we just sort of speculating here without the transcript No they couldn't have sentenced him prior to his testimony because the agreement sets out we are postponing sentencing until we have achieved full cooperation and testimony in the federal case where's anything in here about a state case in any matter in which it's called upon to cooperate testimony in any criminal proceeding and we know because the motion in limine August I believe was 15-16 prior to trial the state's attorney talked about we have this deal we are going to bring out this consideration that he received in exchange for his testimony we know that there's an agreement going on here let's say the jury hears he has 5 convictions and he's getting 18 years minus 3  in the state case and then this other thing that they're never going to hear about but I don't the jury in this case hears that Bucky Williams is going to get 18 years or 15 and then he has his 5 criminal convictions are you suggesting the jury would have found your client not guilty I think the jury or there was a reasonable probability that the result would have been different yes it's very different than if you have 3 years off of 30 if this guy is cooperating with the feds he's cooperating with the state he's under the thumb of these people are we going to then hear what he's cooperating about he's got something over there they're giving him half off if he cooperates but they're not going to discuss what it's about what the case is about what is the point of saying he's getting a deal if you don't explain what the deal is about I just don't see it not coming in what they needed to bring out was this guy is working with the feds and the state's attorney he's getting he's facing a minimum of 30 years in exchange for his testimony he's getting 60% in exchange for his testimony about what any cooperation is the jury going to hear this in a vacuum that's what you're suggesting they're going to hear it and they're just going to say ok the judge is not going to let anything in about what the nature of this agreement is the judge can do that and I would suggest that that is more appropriate than something that's blatantly false 3 years off of 30 which is completely wrong for the jury to hear this guy is cooperating with the federal government the federal government is giving him a downward departure for his testimony this guy should be facing 30 years but he's actually getting 50 where's the knowing use of this the state has to know that they're presenting perjured testimony well the state has an obligation to use some due diligence to understand this is their witness they are fronting this testimony they rely on this testimony in their closing argument this is the case if you look at US Supreme Court decided this long ago that even if the trial attorney is unaware of the actual terms or that there's been an agreement somebody in this attorney's office knows and we have an obligation and it's a due process violation for them not to use due diligence to get that out the Illinois Supreme Court has said something similar due process requires good faith which requires attention to detail even unintentional deception or misrepresentation cannot be excused when this is a key witness this is a state's witness in the control of the state it doesn't have to be knowing use well if it's to be knowing use so such literal knowing use that just gives the state license to put blinders on and say oh defendant what do you think you're going to get oh we didn't know I don't know that we're here to decide whether that should be changed but I do think that the case authority says that it has to be knowing use well Giglio says whether it's by negligence or design they have an obligation to know it is the prosecutor's responsibility same thing in Cornell and the Illinois Supreme Court due process does not tolerate selective inattention to significant facts so they do have an obligation I get what you're saying but the other side of the coin we have a situation where we have a defendant saying well that's me and I did it isn't that kind of like a harmless situation first I would submit that because this is a due process violation it is the state's burden to show that it's harmless beyond a reasonable doubt as to a confession we know that false confessions do occur and there are reasons why a defendant might confess falsely specifically in this case what's curious about his confession is he claimed this was fed to me this wasn't really what I wanted to say part of his confession was that as a motive he was part of this shooting at 3 o'clock that happened at a house and that was his motive to go and do the shooting of this case well Aki Williams admitted at trial that he was part of that first shooting or he was one of the recipients of the shooting and he said that he named 3 or 4 guys were there and Marshawn White was not one of them so if we have an inaccuracy or discrepancy in this part of his confession what else is inaccurate about that confession are you talking about the earlier shooting? right and part of his confession was oh yeah I was part of that that's why I went on to commit this other shooting that was his motive Williams said did not name him as one of the participants in that first shooting so it kind of raises some questions about the accuracy of that confession juxtaposed against you know this witness who is allowed to look more credible and the jury remains in the dark as to important facts by which it could assess its credibility were they told that this Mr. Williams, Aki Williams didn't he give the accounting the same accounting before he was ever given any deal before he was given an official deal but even at that initial time when he started talking he was being arrested for this criminal crime he had a motive to curry favor and to have some currency with the state so it's not like he just offered this for no innocent bystander clearly again the prosecutor acted improperly also defense counsel failed to protect the due process rights in this case he failed to show the jury the amount of motive that this witness might have had to curry favor and also missed an opportunity to use significant impeachment of this witness then counsel also failed in his failure to know the rules of trial and to know the law and to fail to notify the state of his alibi so not only is he allowing this other witness his credibility to be enhanced he performs in a way that allows the court or gives the court reason to completely preclude his client's testimony and his alibi testimony so he gets on the stand is unable to say he says oh I was somewhere else the court strikes it calls the jury disregard anything he said about where he was before what exactly did he say about where he was he stated I was at my girlfriend's house all day on the day of the shooting well are there some cases where you're just kind of stuck with a tough one like the lawyer who was representing him there's a videotape of the shooting there's two eyewitnesses to the shooting you know they're the kind of witnesses that generally you're going to have in a case like this because everybody involved is kind of filthy in terms of convictions prior whatever so I mean in some ways those are the kinds of witnesses you're going to see and that they sort of fall into place with the whole picture so here we have a lawyer who's trying to defend a case where there's a videotape his client is giving a confession and the cases do suggest that a confession is pretty compelling but then you have two other witnesses who are kind of actively involved in the whole so it's really kind of an overwhelming situation in terms of the evidence and you have a lawyer who's trying to defend it and initially he files a compulsion defense I'd like to add one more little footnote on this when you look at the lawyer's obligation I mean he was vehemently arguing this was compulsion and self-defense and now all of a sudden he's acting to shift gears to say well he was at his girlfriend I mean what is the lawyer's obligation when he's faced with those kind of conflicting I mean the court struck his ability to do that compulsion defense and I'm not clear on how vehemently he didn't file it without some information I hope from his client then he subsequently filed a self-defense and then he said I'm withdrawing that now that I've talked to my client and read the file I'm withdrawing that let's hear your 20-20 hindsight you're a lawyer you've got two eyewitnesses you've got a defendant who's confessed and you've got a videotape of the shooting what's your best defense? I would say the video does not show the guy clearly the one witness Earl Lewis never saw the shooting he was involved in a fist fight our other witness, the only one who did see the shooting is getting a deal the confession as I pointed out earlier has some flaws in it and you know what we call that? reasonable doubt is that what the defense was in this case? it was that but then he also it was reasonable doubt yes and to bolster that his client was going to say I wasn't there I was at my girlfriend's house the court so struck that so you would have added an alibi with the reasonable doubt yes or he got into a situation where he puts this guy on the stand and now he's on the stand and then the court strikes a testimony and the guy's stuck and all we get when the defendant is testifying is a chance for the state to impeach him any time he tries the alibi is struck when he tries to attack the confession by the length of interrogation objection sustained the alibi is probably pushing a button because you've got a case where you have a videotape you've got a confession and you've got two eyewitnesses you can say I do reasonable doubt plus an alibi but I would say 75% 80% of lawyers trying these cases are not going to throw in an alibi they're going to go with the strict reasonable doubt because that's one you can possibly sell but there are cases and the Supreme Court has recognized that sometimes lawyers get stuck with some real losers and they have to do the best they can and you look at the whole record and you see whether the lawyer effectively represented his client or not and I don't know how you can say that reasonable doubt is a bad strategy because there aren't very many cases that are tried in this state where you've got two eyewitnesses a confession and a videotape that's kind of the exception to the general rule reasonable doubt reasonable doubt is not a bad strategy but after talking to his client he made a decision to put on an alibi once he made that decision he was supposed to notify the state's attorney as to that decision he did not do so so then his witness was already on the stand the harm that comes from that where his alibi is struck everything he tries to get out from this client that's possibly positive to his case is struck and he's just subject to cross-examination at which time the state can replay the videotape impeach him, talk about his confession present this whole state again for some reason he had a reason that he wanted to put this guy on for an alibi his deficiency was when he failed to notify the state and failed to understand that he had to present notice and this harm then came to his client in addition to as we discussed in the first issue where in the meantime the state is allowed to bolster its witness and really hammer in its closing argument about how this guy didn't get a deal, it was three years off if he was really conniving he would have done something to get tenure so juxtaposed you have a witness being bolstered due to counsel's ineffectiveness in part and is a complete preclusion of alibi so based on those errors in this case we would say that this was a verdict there's no competence in this jury's verdict and we would ask this court for reversal Right, and we'll allow you some time to rebuttal. Mr. Hodes? May I please the Court Assistant State Attorney Brian Hodes on behalf of the people first I guess I would like to discuss the thing that the court raised first which was the appendices the bachelor's attendance brief and how exactly they interrelate with that we move to, as the court notes noted, we move to strike them, we stand by that but at the same time we believe that now that we've gone this far this case can't be decided because defendant's claims regardless of how one attempts to construe those documents are meritless Well don't they suggest that there's a deal and that this guy's going to get less than the 30? They do suggest that there is a deal and there was a deal but the deal was contingent as your honor noted and the deal was contingent at the moment that the witness testified, Aki Williams that is and he didn't know what he was going to get or whether this deal would come through it was contingent on his future actions so when he testified the federal deal at least as opposed to the state deal was a deal for future performance I guess Do you think that's your best argument that at the time he testified it would be pure speculation as to what he was actually going to get because he hadn't performed his obligations under the deal? Yes, I mean that's part of it. There are others I think that maybe the very best one What about this notion that we're not looking at whether this was knowing use of perjury Do you agree or disagree with counsel as far as her characterization that the states that in order to establish the denial of a fair trial it has to be knowing use I know you would argue that there wasn't any knowing use I'm not suggesting There clearly wasn't any knowing use because the deal was contingent Is that the standard or is it unintentional or a reckless use of First of all the case that counsel discussed, Julio involved witness testimony that no promises of immunity had been made for testifying in a federal case where another U.S. attorney another person in the same office had in fact made such a promise to the witness. That's a pretty clear case That's a lot different. That's the same office not a contingent agreement. So I think that case, if that indeed does stand for the proposition that knowingness is not the standard If this is contingent do you think that the trial judge is going to allow them to say that he's going to get half of this sentence but not explain how or why? No I don't and I think that the defense actually prevailed on a motion to eliminate essentially to completely separate this case from the federal case. So that there wasn't a trial of another case in front of the jury involving a pretty dirty filthy operation that was netting everybody I guess two, three, four, five thousand dollars a week over a course of how many months more than a year. The Poison Line Conspiracy case was a very big deal and the judge ruled as the defendants wished to keep that completely separate from this case. It could not be used to cross examine defendant who of course stood the most to lose on it because the defendant was the defendant Aki Williams wasn't the defendant here and it could also not be used to cross examine Williams. The judge said in making that ruling and repeated it before trial I want the jury to know what consideration he is getting for his testimony in this case meaning the murder case where defendant was the defendant not the elaborate But it is a big chunk off of the sentence isn't it? Fifteen years off of thirty? I guess it would have been a big chunk off the sentence but we didn't know if he would get that yet. Plus he was as you said a very dirty witness from the get go. Well he would have been even dirtier though if the jury had heard about his other deal that he had going. Yes and so would have defendant. Let me ask you, do you understand that everybody had this document before trial began? Yes and I think the trial judge made everybody except the trial judge trial judge as the defense has conceded didn't have the document. She heard about it obviously in making that ruling but she didn't have it. Was there a joint motion to keep out the case itself? What happened was there was a motion in limine filed and in ruling on the motion in limine they didn't discuss the document per se. They didn't discuss the terms of this provisional deal which is what I would call it because it was completely predicated on defendants, not defendant excuse me, on the federal defendant in that case Mr. Williams compliance in all manner of federal cases against a number of people. It was not discussed as such and they didn't talk about exactly how they would deal with that. What the judge said was that case is separate and she made a point of that twice right before trial when you bring up Williams are you going to, how are you going to deal with this? The defense didn't say anything about that and I think the defense was very happy in fact defendant himself agreed with the strategy of keeping the federal case utterly separate from this. How about the strategy of pulling out an alibi at the 11th hour? Doesn't that make this lawyer look rather ineffective shall we say? If it does the ruling was not was merely that he couldn't say that he was at his girlfriend's house at the time he was still allowed to testify that he didn't do the crime he was still allowed to repudiate his video confession which by the way was given while he was watching the videotape of the murder. I mean those two pieces of the evidence linked. So the trial judge was going to let him say I didn't do it but he wasn't going to let him say I was somewhere else at the time? And point out a specific place like that because there was no opportunity whatsoever for the people to respond to it. It just came out of his mouth at that moment too. This isn't one of these situations where somebody made a motion and said we'd like to do this. Didn't the trial judge also say he couldn't testify that he was not present? I believe the trial judge did. Yes. Was that problematic? Well I mean that was part of his I mean that's not an alibi to say I wasn't there is it? They kind of parsed the terms of alibis the term alibi during that discussion. They said alibi is you know where were you? You have to give the other side person that didn't cite the case. Strayhorn and a number of cases have made and the Supreme Court rule makes it incumbent upon the defense to specifically identify the alibi. Where were you? Who were you with? If there was someone. What was his statement that was blurted out that the court struck as far as the actual testimony? I was at my girlfriend's house and he gave the address too. Now in your opinion is that an alibi or is that something else? That's an alibi. It's an alibi under the Illinois rule I think that's really what the issue is. So he was actually giving an address saying where he was at the time of the crime. The rules do require you have to give advance notice. So doesn't the lawyer look like kind of a fool for pulling out an alibi at the 11th hour and then saying well you don't really I'm not planning on calling another witness. He said that in advance before the defendant testified. We've agreed this is the only person we're calling. Defendant agrees. It's a matter of strategy which things to raise when. I think that the primary thing is that there's no way in the world that they can show prejudice in this case. Whether you want to take the lawyer to task for what may have been an act of desperation as your Honor put it. I don't know if you used that word. There are cases where defense attorneys are really between the proverbial rock and a hard place. I mean this is a case that I don't think is particularly like a lot that you see where you have two eyewitnesses, a videotape and a defendant confessing. That's not the run of the mill. So the defense attorney is kind of in a difficult position. And if you evaluate the defense attorney's performance on the whole, which is after all what Strickland says, did he conduct a meaningful testing of the people's case? I think it's very clear based on the entire record that he did. He vigorously litigated a motion to suppress and obviously if that had prevailed, this is an entire different case. That was the motion to suppress the state? Yes. He did try to keep that out and get rid of it. And he won essentially the motions and eliminate, basically bifurcate this case from the federal case so that while Williams was dirtied by various things and the people's other witness was dirtied by other things, the defendant wasn't dirtied at least by that. He didn't come in as a convict or someone who had reached a drug dealer. Did he have any convictions? The defendant? I think he had something pending. I don't recall that that was something that was raised at trial. It may have been raised in sentencing. He testified. I just don't recall now offhand whether there were any did the state introduce any No, we didn't. I don't believe that we introduced anything at trial. He was kept relatively clean. He was kept very clean. In fact, we had a tag-along case I think way back in the record and we opted to proceed on this case first. The tag-along case, I'm referring to it as the tag-along, was a smaller drug case, but it was a drug case. All right. So, you know, this is and he litigated the post-trial proceedings. He certainly cross-examined other people's witnesses and at the end of the case, the end of the entire case after the motion for reconsider sentencing was denied the trial court, you know, when I was away and said, I want you to know, speaking to the defendant, that your counsel is zealous to represent you throughout this case. I think that's an accurate appraisal. I don't think there was ineffective assistance under either prong of Strickland, but certainly there's no way that they can show prejudice because the most powerful evidence was provided by the defendant himself. He watched a videotape of the murder and confessed. You can't really identify people from that video. It's tough to see who, but I mean, he then supplied that for them. He identified them and he even explained how it was he came by the gun, how he knew that the gun how he knew that the victim that he just walked up to with impunity, and you can see that, pulls out this big gun and shoots him. How he knew the victim wasn't going to be able to defend himself because the gun he had was procured for him, him being the defendant, earlier. So he basically used the victim's gun to shoot him to death several times. And that more or less matched the ballistics. And he also explained why it was we couldn't recover the gun because he then gave the gun back to the person who stole the gun for him, who sold it. So he supplied some pretty useful detail there without any prompting. And the jury saw this. And this, I think, is about the most powerful possible evidence you can have of someone's guilt. So I don't think they can prove prejudice, even if you want to take counsel to task for not alleging alibi. Well, I'm just asking whether this is something that might be considered ineffective. Well, if it is under the first prong, it certainly isn't under the second prong. I think that's very clear. Anything further you wish to add at this time, Mr. Hodes? No, unless the Court has further questions. Thank you. We would ask, obviously, that the Court affirm the defendant's conviction and sentence for the reasons I gave today, and more importantly for those detailed in our brief. Thank you. All right. Ms. Oldpaw? Just a couple things. I think it's not necessary to parse out this plea agreement as to this federal information, this federal case is going to come out if we go into this. The agreement is clear. Any and all participation or cooperation, the sentence will be imposed 60 percent of the statutory minimum. How do you respond effectively to this notion that what you have here is a completely contingent agreement? How do you respond? This is contingent upon something that he has to do. We don't know what it is he has to do. He has to cooperate fully with all these. And do we know, or how do we say at this point, he's getting 18 years when he hasn't even finished his contingencies? What needs to happen is, what do you expect to get? You're receiving something in exchange for your testimony here. What is that? Oh, it's right here in the agreement. And to speculate, you know, to say, oh, we're speculating as to what exactly he's going to get, or this is uncertain an estimate. They didn't present it as an estimate or a speculation at trial. They said three years off of 30. That's what he's getting. That's what he's getting for this case. There's no three years in this agreement. That's what he got for this case. But how do you explain Well, I don't think that that's clear that he got that for this case. But how do you explain what he's going to get in the other case without explaining what he has to do? All they need to say is this guy's agreeing to cooperate with the federal government, the state government in exchange for his cooperation. He's getting 60% off of his sentence in exchange for his testimony. And that was the understanding. As you can see, you can see that in the motion in limine. But isn't it contingent on his cooperation? I mean, how can you say he's going to get this when he's not going to get it unless he does A, B, C, and D? What's A, B, C, and D? We know that that's his cooperation, including in this case. So we know that this guy is, all the jury had to know is that this guy is under the thumb of the federal government, the state government. He has a reason to curry favor. And the fact that he's up on the stand testifying that he's only getting three years off of 30, that's false testimony right there. He knows that this guy, that he's expecting a lower sentence. And so for the jury not to hear that, that he has a motive to curry favor and that he is actually testifying falsely. I don't know how he's going to get this when he hasn't done whatever it is he's supposed to do, which we don't know really what it is. It doesn't even have to be done a year later. Mr. Williams, you're getting a deal in exchange for your testimony? Yes. What are you expecting that you're going to get? I have an agreement with the federal government 60% downward 60% reduction in exchange for my cooperation in this case and maybe in another federal case. Let the jury know what this guy is getting. He's not getting a mere three years. And to argue and close an argument only getting three years? Of course you could believe this guy. If he were really a conniver, he would be getting 10 or 15 years. Well, he was getting an additional 10 or 15 years. Finally, one final thing I would say is that if this court does find that there's not enough information and certainly the trial judge had an obligation to he just took the prosecutor's word this was not knowing. Hey, it sounds like there's something going on here. The judge should have inquired into this a little bit further and looked at the agreement himself. If this court finds that there's not enough information based on this record and the court did not do enough inquiry below, we can't send it back for further information. Because when you have a witness who, I mean this is an important issue here where you have a witness who's testifying falsely and a person, and this is a key witness the only witness that saw this guy at the scene this results in a due process violation. Therefore, we would ask this court either reverse or remand it for further proceedings. The case was well argued and well briefed and we will take it under advisement and that concludes our orals today.